# Kephart v. Carbon Steel Company, Appellant.

*Negligence—Master and servant—Defective machinery — Contributory negligence.*

In an action against a steel company to recover damages for injuries sustained by an engineer while starting a steam engine, the plaintiff was guilty of contributory negligence where it appeared that the engine was at rest with the flywheel at a dead center, that owing to a defect in the machinery more than usual force was required to move the flywheel, that while the steam was turned on plaintiff inserted an iron bar between the spokes and pried the wheel off the dead center so that the engine, because the steam was turned on, started causing the bar to strike and injure plaintiff, and there was evidence that plaintiff was an experienced engineer familiar with the operation of the engine.

Argued Oct. 18, 1915. Appeal, No. 179, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 2361, on verdict for plaintiff, in case of Edward Kephart v. Carbon Steel Company. Before

MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.
Reversed.

Trespass to recover damages for personal injuries.
Before EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,000.00 and judgment there-
on.   Defendant appealed.

*Errors assigned* were in refusing to direct a verdict
for defendant and in refusing to enter judgment for de-
fendant n. o. v.

*W. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for ap-
pellant.

*L. K. Porter,* of *L. K. and S. G. Porter,* for appellee.

OPINION BY MR. JUSTICE STEWART, February 21, 1916:

The plaintiff at the time he received his injury, was
and had been for upwards of five years an employee of
the defendant company.   During this period he had
charge of engines of different kinds, and for a year or
more before his accident had been in charge of an air
compressing engine, the particular piece of machinery
that occasioned his injury.   This air compressing engine
was driven by steam, but was operated only as com-
pressed air was required by workmen in another part of
the plant engaged in chipping billets.   It was at rest on
a dead center when the plaintiff returned to the plant
about five o'clock in the evening of the day of the acci-
dent to enter upon his night turn.   Within an hour there-
after he was directed to start his engine, and it was
while so attempting that he met with his injury.   The
plaintiff's own narrative—and he was the only witness
to testify to the occurrence—was as follows: "I went to
open up the valve to try to let the water out of it—the
cylinder—and after I thought I had the water turned out

I turned the valve on to give it—the engine—steam, and she wouldn't go, and I had to use the bar." In answer to the question as to how he had used the bar, he said, "Well, there was spokes in the flywheel, and on the foun-. dation is what we call a pillar block, and there was a big bolt come up through that to fasten the pump down to the foundation, and we would get that bar through the spokes of the wheel and put it on that bolt and pry down on it, and when I done that the steam came on so quick and knocked the bar, and struck me on the shin and broke my leg." There is nothing in any part of the plaintiff's testimony to qualify in the least anything he here said as to the occurrence. We have then this state of facts to deal with: the engine was at rest on a dead center when plaintiff attempted to start it, a situation not unusual, one which under ordinary circumstances is not difficult to overcome, and in itself is not suggestive of defect or imperfection in the machinery. Ordinarily the engine when at dead center may be started by turning the flywheel by hand, the air being first released from the valves at the end of the air cylinder, and the steam then turned on. If the air be not first released the wheel cannot be turned by hand, and additional force is required. The plaintiff says he had in this instance released the air and had drained the water, but, because of the tightness of the bearings, he was required to resort to the use of the bar to start the wheel. Let it be conceded that it was negligence on the part of the defendant to allow the bearings of the fly wheel to become too tight,—the one condition that the plaintiff in his testimony complains of, and which he says required the use of the bar to start the engine, the water in the cylinder having been drained—what can be urged in defense of an engineer of five years experience who would attempt to lift an engine off a dead center by using a bar between the spokes of the flywheel with the steam turned on, its full energy bound to be applied to the flywheel the very instant the bar had served its purpose

in lifting the engine from its dead center? And that
was this case as disclosed by the plaintiff's own testi-
mony. The very instant the flywheel had been pried to
the point that the center was overcome, the steam as-
serted its energy, and as a result, by the rapid revolution
of the wheel, the bar was thrown with great violence
against the person of the plaintiff, and he thus received
his injury. Whatever there was about the engine, if
anything, that called for correction, and of which the
plaintiff according to his own testimony had complained
to the superintendent, who, he says, promised to make
the correction, such irregularity could not have been the
proximate cause of plaintiff's injury. What he com-
plained of was, first, that water accumulated in the cylin-
der, and second, that the bearings of the flywheel were
too tight to permit it being turned by him. In his testi-
mony he unqualifiedly admitted that he had drained the
water from the cylinder, and on cross-examination he
just as explicitly admitted that the water had not ob-
structed the movement of the wheel on this particular
occasion. The water therefore in no way called for the
use of the bar. Conceding that the tightness of the bear-
ings made it necessary to apply more than usual force
to move the flywheel from the dead center, and conced-
ing that a bar was sometimes resorted to in order to ac-
complish it, whether with or without the knowledge of
the employer, the fact remains that in this instance the
bar was used under conditions dangerous in the extreme
which were created by the plaintiff himself, and for
which he alone was responsible. He suggests nothing
to excuse his disregard of settled principles of mechanics
in leaving the steam on the engine while he was using the
bar, except the fact that he had three or four weeks be-
fore complained to the superintendent of the tightness
of the bearings, and that the superintendent having
promised to correct it, had failed to do so. This the
superintendent expressly denied. Were this all, it
would be for the jury to decide between them; but

whether this plaintiff or superintendent was speaking
the truth in regard to the fact, it is too evident for dis-
cussion, that while the tightness of the bearing might
have been sufficient excuse for the use of the bar, it could
afford no warrant for using it under dangerous con-
ditions which the plaintiff, an experienced engineer,
must have known could easily have been avoided.   We
can take no other view of the case than that plaintiff's
injury resulted from his own carelessness, and that the
case was one calling for binding instructions for the de-
fendant.   The assignment of error is sustained and the
judgment is accordingly reversed.